United States District Court
Southern District of Texas
**ENTERED**
March 25, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AARON HILL, | § | |
| | § | |
| Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. 2:23-CV-00165 |
| | § | |
| THREE L., INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (D.E. 29). Defendant seeks summary judgment on Plaintiff Aaron Hill's claims, which are brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (D.E. 40, p. 1; D.E. 26, p. 1). Plaintiff opposes summary judgment. (D.E. 33; D.E. 39). Both parties have objected to portions of the other's respective summary judgment evidence. (D.E. 36; D.E. 33, p. 1–5).[1] After review, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion. (D.E. 29).

### I. Background

#### A. Factual Overview

Defendant Three L is a wholesale fuel and lubricants distributor. (D.E. 29, p. 2). In January 2021, Defendant hired Plaintiff[2] as a fuel-truck driver and assigned him to work at the Corpus Christi facility. (D.E. 26, p. 3). Plaintiff's immediate supervisor was Justin Garza. (D.E. 29, p. 5).

---

[1] The Court will address the parties' evidentiary objections to the extent a contested piece of evidence becomes relevant to the Court's summary-judgment analysis. *Brown v. Valvoline, LLC*, No. 4:22-CV-04059, 2024 WL 2946099, at *2 (S.D. Tex. June 11, 2024) (Hanen, J.). The Court **OVERRULES** any evidentiary objection and **DENIES as moot** any motion to strike raised by the parties but not specifically addressed in this Order.

[2] Significant to his Title VII claims, Plaintiff Aaron Hill is a Black man. (D.E. 26, p. 2).

During the first six months of his employment, it is undisputed that Plaintiff was an exemplary employee. *Id.* Garza praised Plaintiff's work ethic, and, in June or July 2021, Garza nominated Plaintiff for Defendant's Driver of the Year award for the Corpus Christi Region. *Id.* Over the course of the next six months, however, something changed. *See id.* at 5–6 (alleging decline in Plaintiff's work performance); (D.E. 33, p. 6) (alleging racial harassment, discrimination, and retaliation began six months into Plaintiff's employment).

The parties do not dispute the following facts. From July 2021 to December 2021, Plaintiff received five disciplinary citations. (D.E. 29, p. 6; D.E. 33, p. 6–7). The write-ups charged Plaintiff with contaminating fuel, taking unauthorized delivery routes, and receiving too many incidents in a given period of time. (D.E. 29, p. 6). Defendant issued the fifth and final write-up on December 27, 2021, for allegedly cross-contaminating fuel and terminated Plaintiff's employment the same day. (D.E. 33, p. 6–7).

From this background, the parties have two principal disagreements that form the substance of this lawsuit and the instant motion. *First*, the parties disagree about the motivating factor(s) behind the disciplinary actions and termination. Defendant says the disciplinary actions resulted from Plaintiff's cross-contamination of fuel and unauthorized route. (D.E. 29, p. 6). And Plaintiff's termination, in turn, resulted from these disciplinary actions. *Id.* at 5–6. Plaintiff, on the other hand, says the disciplinary actions and termination were motivated by race (i.e., Plaintiff was disciplined and terminated for conduct which non-Black drivers were not) and retaliation (Plaintiff was disciplined and terminated for complaining about the use of racial slurs in the workplace). (D.E. 26, p. 4–7).

*Second*, the parties disagree about whether, and to what extent, Defendant's employees subjected Plaintiff to the use of racial slurs during his employment. Plaintiff alleges Garza uttered

the N-word to and towards him on multiple occasions, and both Garza and Sean Kramer (Defendant's co-owner) referred to him as "bubba." (D.E. 26, p. 4–5). Defendant disagrees with Plaintiff regarding the comments made and whether such were legally sufficient to create a hostile work environment. *See* (D.E. 29, p. 14) (discrepancy as to whether the term "bubba" was used); *id.* at 15 (unidentified utterance of the N-word not enough to establish a hostile work environment).

### B. Procedural Background

Plaintiff sued Defendant for violations of Title VII and section 1981. (D.E. 26, p. 1). Plaintiff alleges that, beginning in June 2021, he was subjected to racial discrimination and retaliation in the form of pretextual disciplinary citations and ultimate termination, and that Defendant's employees created a hostile work environment through their use of racial slurs. *See* (D.E. 26, p. 3–7; D.E. 33, p. 6; D.E. 39, p. 1–2).

For his discrimination claims, Plaintiff alleges that Garza "undermine[d] [his] employment with racial and unjustified write-ups, which Mr. Garza did not do to any of the other fuel truck drivers." (D.E. 26, p. 6). Eventually, Plaintiff alleges "he was terminated, even though other non-black fuel truck drivers contaminated fuel but were not disciplined like Plaintiff under similar circumstances or variations thereto." *Id.* at 7. These allegations amount to two charges of discrimination: (1) discriminatory discipline; and (2) discriminatory termination.

The substance of his retaliation claims mirrors that of his discrimination claims—Plaintiff alleges both the discipline and termination were in retaliation for his protected activity. *See id.* at 5–6. Specifically, Plaintiff alleges that he was subjected to unjustified discipline and ultimately termination after he complained about the use of racial slurs. *Id.* at 5.

Finally, Plaintiff also brings a claim for hostile work environment. *Id.* at 4–5, 9–10. The racial slurs about which Plaintiff complained to human resources form the basis for this claim. The

examples highlighted by Plaintiff in his complaint include Garza uttering the N-word to Plaintiff, Garza instructing Plaintiff to "n-word-rig" a hose that burst open, and Garza referring to Plaintiff as "my N-word."[3] *Id.* at 4. Plaintiff also alleges that both Garza and Kramer referred to Plaintiff as "bubba"—a term they did not use for other truck drivers or subordinates. *Id.* at 5.

## II. Law and Analysis

Defendant has moved for summary judgment on all of Plaintiff's claims. (D.E. 29, p. 1). The Court understands Plaintiff to bring three buckets of claims: (1) Title VII and section 1981 race discrimination; (2) Title VII and section 1981 retaliation; and (3) Section 1981 hostile work environment. *See* (D.E. 26, p. 7–10). In the Fifth Circuit, when the only two substantive differences between section 1981 and Title VII—the statute of limitations and the exhaustion requirement— are not implicated, "[t]he analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Here, the substantive differences between the statutes are not implicated, and the elements of Plaintiff's Title VII and section 1981 claims overlap entirely. *See, e.g., Jones*, 427 F.3d at 992. Accordingly, the Court analyzes the claims together. *Cf. id.*

### A. Summary Judgment Law

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1017–18 (5th Cir. 2021) (quoting FED. R. CIV. P. 56(a)).

---

[3] The complaint and summary-judgment evidence contain several variations of the racial slur. For ease of reference, the Court uses the term "N-word." To the extent that a material difference exists between the various formulations of the slur, that question is not before the Court.

The moving party bears the initial burden of identifying the portions of the record it believes show the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this requirement, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that" a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The nonmoving party "must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 457 (S.D. Tex. 2012) (Rosenthal, C.J.) (citing *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007)), *overruled on other grounds by McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463 (5th Cir. 2015).

"A fact is 'material' if its resolution in favor of" a party could affect the lawsuit's outcome. *Hamilton*, 232 F.3d at 477 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). When evaluating the evidence, a court may not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citing *Morris v. Covan World Wide Moving Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250–51 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)). Factual controversies are resolved in favor of the nonmoving party; however, there must be an actual controversy—both parties must have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[W]here the facts specifically averred by [the nonmovant] contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "[T]he purpose of Rule 56 is

to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Id.* at 888–89.

## B. Discrimination

### i. Law

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The plaintiff may establish discrimination with direct or circumstantial evidence. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)).

If the plaintiff attempts to establish Title VII discrimination with circumstantial evidence, the *McDonnell Douglas*[4] burden-shifting framework applies. *Portis*, 34 F.3d at 328; *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination. *See Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021). To make out a prima facie case, the plaintiff must show they (1) belong to a protected group; (2) were qualified for the position at issue; (3) were discharged or suffered some adverse employment action by the employer; and (4) were treated less favorably than other similarly situated employees outside their protected group. *See Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 649 (5th Cir. 2025) (citing *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)).

If the plaintiff does so, the burden shifts to the defendant "to proffer a legitimate,

---

[4] 411 U.S. 792, 802–03 (1973).

nondiscriminatory reason" for its action(s). *Watkins*, 997 F.3d. at 281–82 (citing *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)). If the defendant meets this burden, the plaintiff must then produce substantial evidence indicating that the defendant's proffered legitimate, nondiscriminatory reason is a pretext for discrimination. *Id.* at 282 (citing *Outley*, 840 F.3d at 216).

### ii. Analysis

As a refresher, Plaintiff makes two allegations: discriminatory discipline and discriminatory termination. *See* (D.E. 26, p. 4–7). Defendant moves for summary judgment with respect to this claim on two grounds: (1) Plaintiff has failed to make out a prima facie case of discrimination; and (2) Plaintiff has failed to show that Defendant's proffered reasons for its actions are a pretext for discrimination. (D.E. 29 p. 9, 18–20). Even assuming Plaintiff has made out a prima facie case of discrimination, Defendant has proffered a legitimate, nondiscriminatory reason which Plaintiff has failed to rebut.

Assuming *arguendo* that Plaintiff has established a prima facie case of discrimination, the Court finds that Defendant has met its burden to produce a legitimate, nondiscriminatory reason for its actions. Defendant asserts that the reason for its actions was Plaintiff's poor performance. (D.E. 29, p. 16–18). Specifically, Defendant points to Plaintiff's alleged cross-contamination of fuel on multiple occasions, as well as "other employee misconduct." *Id.* at 17. Poor performance, defined here as cross-contamination of fuel,[5] suffices as a legitimate, nondiscriminatory reason both for the disciplinary actions and the termination. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (finding assertion of poor performance, supported by specific examples, sufficient to shift burden to Plaintiff to show pretext).

---

[5] The Court does not consider "other employee misconduct" because this additional assertion is not "clear and reasonably specific." *See Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (applying standard).

7 / 22

The burden therefore shifts to Plaintiff to "produce substantial evidence indicating that the proffered legitimate, nondiscriminatory reason is a pretext for discrimination." *Watkins*, 997 F.3d at 282 (cleaned up). Plaintiff can show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (first citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001); and then citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)).

Plaintiff has not met this burden. Nowhere in Plaintiff's opposition to summary judgment does he produce substantial evidence to show disparate treatment or that Defendant's proffered explanation is false. *See generally* (D.E. 33). Indeed, Plaintiff does not once use the word "pretext." *Id.* To be sure, Plaintiff disputes cross-contaminating fuel. (D.E. 33-2, p. 4) ("The three incidents of supposed cross-contamination cannot be proven to have been done by [Plaintiff].") But the relevant question is "whether [Defendant's] perception of [Plaintiff's] performance, accurate or not, was the real reason for [his] termination." *Laxton*, 333 F.3d at 579 (citing *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001)). In other words, did Defendant believe Plaintiff cross-contaminated fuel, and was this belief the real reason for the disciplinary citations leading to Plaintiff's termination? Defendant received complaints in June and July 2021 about Plaintiff cross-contaminating fuel, and each complaint was listed in Defendant's reasoning for issuing the disciplinary citations. (D.E. 29-5, p. 1; D.E. 29-6).[6] When Defendant suspected Plaintiff of cross-contaminating fuel in December 2021, Defendant took samples of the fuel, sent it to a lab for

---

[6] Plaintiff objects to D.E. 29-6 on hearsay grounds. (D.E. 33, p. 5). The statements in this document are not offered for the truth of the matter asserted (whether Plaintiff contaminated fuel) but for the effect on the listener (Defendant's belief that Plaintiff contaminated fuel). The Court **OVERRULES** this objection. FED. R. EVID. 801(c)(2).

testing, and received test results indicating to Defendant that the fuel was contaminated. (D.E. 29-9).[7] Though Plaintiff argues he did not cross-contaminate fuel, (D.E. 33-2, p. 4), he does not produce substantial evidence showing that Defendant did not believe he cross-contaminated fuel.

Because Plaintiff has not presented substantial evidence regarding pretext, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's discrimination claim.

### C. Retaliation

#### i. Law

The *McDonnell Douglass* framework also applies to retaliation claims. *Shahrashoob*, 125 F.4th at 652. (citing *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022)). To make out a prima facie case of retaliation, the plaintiff must show they (1) engaged in a protected activity; (2) their employer took an adverse employment action against them; and (3) a causal connection exists between the activity and the adverse action. *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (first citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) (per curiam); and then citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)).

If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Shahrashoob*, 125 F.4th at 652–53 (citing *Feist*, 730 F.3d at 454). The explanation must be clear and reasonably specific. *Id.* (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981)).

---

[7] Plaintiff objects to D.E. 29-9 on hearsay grounds. (D.E. 33, p. 5). The Court **OVERRULES** this objection for the same reason as the previous hearsay objection. *See supra* note 6, at 8.

*ii. Analysis*

a. Prima Facie Case

Plaintiff has made out a prima facie case of retaliation. *First*, Plaintiff engaged in a protected activity when he complained about the use of racial slurs. A protected activity is defined as opposition to "any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000E-3(a). Plaintiff avers that he complained to his supervisor (Garza) on June 26, 2021 about the use of racial slurs, which he alleges constituted racial harassment. (D.E. 33-2, p. 3). Title VII prohibits racial harassment, so Plaintiff's complaint to his supervisor constitutes protected activity. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)) (explaining that Title VII prohibits racial harassment in the workplace).

*Second*, Plaintiff suffered an adverse employment action in the form of both his disciplinary citations and his ultimate termination. To constitute an adverse employment action for purposes of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

It is beyond dispute that termination meets this definition. And the Court finds that the disciplinary citations Plaintiff received also constitute an adverse employment action for purposes of his retaliation claim. Garza both issued the citations and used the racial slurs which Plaintiff complained about, including one complaint directly to him. *See, e.g.*, (D.E. 29-5) (Disciplinary Citation signed by Garza). In this context, receiving disciplinary citations might well have dissuaded a reasonable worker from making or supporting their charge of discrimination against

the person responsible for issuing the citations. *See Brooks v. Hous. Ind. School Dist.*, 86 F. Supp. 3d 577, 587 (S.D. Tex. 2015) (Rosenthal, J.) (finding disciplinary citations materially adverse when subject of the complaints was involved in issuance); *see also Johnson-Lee v. Tex. A&M Univ. - Corpus Christi*, 729 F. Supp. 3d 709, 720 (S.D. Tex. 2024) (Ramos, J.) (finding disciplinary citations materially adverse where the plaintiff disputed their legitimacy and they ultimately led to termination).

To be sure, "the Fifth Circuit has confirmed that written reprimands . . . do not constitute adverse employment actions unless they 'affect job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers.'" *Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P.*, No. SA-21-CV-01234-XR, 2024 WL 1055120, at *13 (W.D. Tex. Mar. 11, 2024) (Rodriguez, J.) (quoting *Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, at *7 (5th Cir. Oct. 18, 2023)). But these disciplinary actions did, on Defendant's account, both affect Plaintiff's standing with the company, *see* (D.E. 29, p. 6) (explaining that Plaintiff received an additional citation for too many citations in a six-month period), and ultimately led to Plaintiff's termination, *id.* at 6; *see Johnson-Lee*, 729 F. Supp. 3d at 720. Accordingly, the Court finds the disciplinary actions chin the bar for purposes of Plaintiff's retaliation claim.

*Third*, the Court finds that Plaintiff has demonstrated a causal connection between the protected activity and the adverse employment action. Although a plaintiff must ultimately prove their retaliation claim according to traditional principles of but-for causation, the but-for standard does not apply at the prima facie stage. *Scroggins v. City of Shreveport*, No. CV 18-0201, 2024 WL 4775106, at *6 (W.D. La. Nov. 13, 2024) (Hicks, J.) (first citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); and then citing *Garcia v. Prof'l Cont. Servs. Inc.*, 938 F.3d

11 / 22

236, 242 (5th Cir. 2019)). "At the prima facie case stage, causation can be established 'by showing close enough timing between the protected activity and the adverse employment action.'" *Id.* (quoting *Garcia*, 938 F.3d at 243) (alterations in original) (cleaned up). The Fifth Circuit has not precisely clarified the degree of temporal proximity which, standing alone, suffices to allow an inference of causation at summary judgment. *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 884 (5th Cir. 2020) (per curiam) (citing *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948-49 (5th Cir. 2015)). In *Evans*, the court noted that "a time lapse of up to four months" can suffice to establish a causal connection. *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citing *Weeks v. NationsBank, N.A.*, No. CIV.A. 3:98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000) (Lynn, J.)). But, the *Evans* court's ultimate holding was only that five days is sufficient to provide a causal connection at summary judgment. *Id.* While there is an open question regarding when a timeline of several months is enough to show causation, it seems clear that a few days suffices. *See Besser*, 834 Fed. App'x at 884–85 (finding two and one-half months insufficient while emphasizing the *Evans* holding that five days suffices).

Plaintiff has produced evidence that only eleven days elapsed between his first complaint regarding the use of racial slurs (June 26, 2021) and the date of his first allegedly retaliatory and unjustified disciplinary citation (July 9, 2021). *See* (D.E. 33-2, p. 3–4). This alone suffices. *See Evans*, 246 F.3d at 354 (finding five days sufficient). But, Plaintiff has more. Before he complained about the use of racial slurs in June 2021, Plaintiff was an exemplary driver. (D.E. 29, p. 5). Then, after he complained, he was disciplined for conduct (contaminating fuel and unauthorized routes) that other drivers were not disciplined for, *see* (D.E. 33-2, p. 5–9), and for conduct that was not prohibited by a company policy (unauthorized routes), (D.E. 33-2, p. 3, 5).[8] The Court finds that,

---

[8] The Court **DENIES** Defendant's motion to strike this evidence. (D.E. 36, p. 8). The touchstone of competent summary judgment evidence is that it may be reduced to admissible form at trial. *See King v.*

together with the temporal proximity, this evidence suffices to establish a causal connection.

Because Plaintiff has made out a prima facia case of retaliation, the burden shifts to Defendant to produce a legitimate, nonretaliatory reason for the disciplinary citations and termination. *Shahrashoob*, 125 F.4th at 652–53 (citing *Feist*, 730 F.3d at 454).

### b. Defendant's Legitimate, Nonretaliatory Reason

Defendant has not met its burden to articulate a legitimate, nonretaliatory reason for its adverse employment actions. Defendant, in cursory fashion, offers that "[a]s stated above, Hill's October 18th complaint did not cause his termination." (D.E. 29, p. 22). In what the Court understands as the referenced portion of its briefing, Defendant argues that Plaintiff's termination resulted from his "repeated violations of his job responsibilities." *Id.* at 18. In support of this argument, Defendant outlines various disciplinary citations that Plaintiff received in the months leading up to his ultimate termination. *Id.* at 16–18. At bottom, though, Defendant "ultimately terminated [Plaintiff] for costing [Defendant] thousands of dollars when he delivered fuel to Quest and cross contaminated the fuel in their repository." *Id.* at 17. So, Defendant's argument, as reconstructed by the Court, is that Plaintiff's cross-contamination of fuel caused his termination, not his October 18 complaint. That does not suffice.

Defendant's cursory statement does not account for the fact that Plaintiff alleges that the disciplinary citations constituted retaliation for his *June* 2021 complaints regarding the use of

---

*Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (unauthenticated and unverified documents not competent summary judgment evidence); *Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (affidavits not based on personal knowledge not competent summary judgment evidence); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (courts may consider affidavits and depositions insofar as they are not based on information excludable from evidence at trial); *Heller v. Shahroodi*, No. CV H-17-2544, 2019 WL 1556315, at *3 (S.D. Tex. Feb. 20, 2019) (Hittner, J.) ("The Court may consider hearsay at the summary judgment stage if the hearsay could be reduced to admissible form at trial.") (citing *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F. App'x 159, 161 (5th Cir. 2008) (per curiam)). Plaintiff could lay a proper foundation and establish his personal knowledge of this information at trial.

racial slurs. *See* (D.E. 26, p. 5–6). In other words, even if Defendant were correct that the October 18th complaint did not cause Plaintiff's termination, that says nothing about whether the June complaints caused the termination (and/or the disciplinary citations). And, similarly, the Court's reconstruction of Defendant's argument—that Plaintiff's alleged cross-contamination caused his *termination*—does not account for Plaintiff's claim that the *disciplinary citations* he received also constituted retaliation for his June 2021 complaints.[9]

For these reasons, Defendant has not met its burden to produce a legitimate, nonretaliatory reason for its adverse employment actions in the context of Plaintiff's retaliation claim and the Court therefore **DENIES** Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim.

### D. Hostile Work Environment

#### i. Law

A workplace that "is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" violates Title VII. *Harris*, 510 U.S. at 21 (internal citations and quotation marks omitted).

To make out a claim for hostile work environment, a plaintiff must prove five things: they

---

[9] Where, as here, a plaintiff has alleged a retaliatory course of conduct that includes both discipline and eventual termination, the sequence of events itself forms part of the claim for retaliation. The Court understands the substance of Plaintiff's claim to be that the disciplinary citations were issued in retaliation for his complaints, and then after Plaintiff complained again, he was ultimately terminated. Defendant's belief that Plaintiff had cross-contaminated fuel does not suffice as a legitimate, non-retaliatory reason to explain this course of conduct because the belief is bound up with the citations which Plaintiff alleges also constituted retaliation. *See* (D.E. 29, p. 16–18) (marshalling the citations in support of Defendant's legitimate, non-discriminatory reason). In this sense, Defendant presents a kind of circular argument for why the course of conduct was not retaliatory. Defendant's cursory (and if not cursory, circular) reason does not suffice to meet its burden to produce a legitimate, non-retaliatory reason for its allegedly retaliatory course of conduct.

14 / 22

"(1) belong[] to a protected group; (2) w[ere] subjected to unwelcome harassment; (3) the harassment complained of was based on [their] membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Johnson v. PRIDE Indus. Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

       *ii. Analysis*

In its motion for summary judgment, Defendant asserts that Plaintiff "has no direct or circumstantial evidence to establish any of the elements of his hostile work environment claim." (D.E. 29, p. 13). Defendant then proceeds to argue only the fourth and fifth elements: "affected a term, condition or privilege of employment," and "prompt remedial action." *See id.* at 13–16. Nevertheless, the Court starts at the beginning and concludes that Plaintiff has established genuine issues of material fact as to the first three elements of a claim for hostile work environment. Plaintiff is a Black man and has presented evidence, in the form of his affidavit,[10] that he was subjected to racial slurs.[11] This suffices to demonstrate a genuine issue of material fact whether he

---

[10] Plaintiff avers that Garza directed the N-word towards him, and that both Garza and Kramer referred to him as "bubba." (D.E. 33-2, p. 1–2). This evidence is admissible as a statement by an opposing party. *See* FED. R. EVID. 801(d)(2). Accordingly, the Court **DENIES** Defendant's motion to strike this evidence. (D.E. 36, p. 2–3). To the extent that Defendant moves to strike on hearsay grounds other representations by Plaintiff of what Defendant's employees said to him, the Court **DENIES** those motions for the same reason. *Id.* at 4–11.

[11] The harassment Plaintiff alleges centers around various iterations of the N-word and the term "bubba." *See* (D.E. 33, p. 9–10; D.E. 33-2, p. 1–2). The N-word is clearly race-based. *See Johnson*, 7 F.4th at 401 (noting N-word as racially motivated). Although in some contexts the term "bubba" might be understood as a non-offensive, race-neutral term, in this context the Court finds that a reasonable juror could conclude the term is race-based. *See Johnson*, 7 F.4th at 402 (citing *Ash v. Tyson Foods, Inc.*, 564 U.S. 454, 456 (2006)) (explaining that context is key to determining whether a term is connected with race); *see also Vital v. Nat'l Oilwell Varco*, No. CIV.A. H-12-1357, 2014 WL 4983485, at *33–34 (S.D. Tex. Sept. 30, 2014) (Rosenthal, J.) (rejecting argument that "bubba" is not racist). In other words, there is a question of fact regarding whether the term "bubba" constitutes racial harassment in this context. *Cf. Cash v. Brown*, No. 12 CIV. 4652 LAK, 2013 WL 150011, at *1 (S.D.N.Y. Jan. 11, 2013) (Kaplan, J.) ("[T]he question whether

(1) belongs to a protected group; (2) was subjected to unwelcome harassment; and (3) the harassment was based on his membership in a protected group. *See Johnson*, 7 F.4th at 399–400 (enumerating elements of hostile work environment claim).

With respect to the fourth element—whether the harassment was sufficiently severe or pervasive enough to affect a term, condition, or privilege of employment—Plaintiff has raised a genuine issue of fact sufficient to preclude summary judgment. Defendant argues that the use of the N-word and "bubba"[12] described by Plaintiff is not sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. (D.E. 29, p. 14). Not so.

"Harassment is sufficiently 'severe or pervasive enough' to create a hostile work environment when it is 'objectively hostile or abusive'—meaning 'an environment that a reasonable person would find hostile or abusive'—and is subjectively perceived by the victim as abusive." *Johnson*, 7 F.4th at 400 (quoting *Harris*, 510 U.S. at 21). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). As part of the objective inquiry, a court must consider all circumstances, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Johnson*, 7 F.4th at 400 (quoting *Harris*, 510 U.S. at 23). "No single factor is required." *Id.* (cleaned up).

---

the term 'Bubba' as used with respect to plaintiff was a racial slur is quintessentially one for a jury."). The Court elaborates on this conclusion below in its discussion of the fourth element. *See infra*, at 16–17.

[12] To the extent Defendant disputes whether "bubba" was used, that too presents a genuine dispute of material fact precluding summary judgment.

16 / 22

In *Johnson*, the Fifth Circuit held the plaintiff had raised a genuine dispute of material fact with respect to the fourth element of his hostile work environment claim. 7 F.4th at 399. The sum total of the picture before the *Johnson* court was that: the N-word was uttered in the plaintiff's presence on at least two occasions where he was the only Black person present, from which the court said it could reasonably infer the slurs were directed at the plaintiff;[13] only the plaintiff was referred to by other terms that were arguably racially pejorative; another co-worker called the plaintiff the N-word to his face; the plaintiff was subjected to other incidents of discrimination, such as hiding paperwork and assigning less favorable tasks; and the harassment arguably interfered with the plaintiff's ability to work. *Id.* at 400, 403–04. Based on these circumstances, the court held that a reasonable factfinder could conclude that the harassment was severe or pervasive enough to constitute a hostile work environment. *Id.* at 404.

To reach its conclusion, the *Johnson* court found that "[f]ar from a 'mere offensive utterance,' [the N-word] is inherently and deeply 'humiliating.'" *Id.* at 401 (quoting *Harris*, 510 U.S. at 23). Indeed, it is "the most noxious racial epithet in the contemporary American lexicon." *Id.* (cleaned up) (first quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015); and then citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004)); *see also Vital v. Nat'l Oilwell Varco*, No. CIV.A. H-12-1357, 2014 WL 4983485, at *34 (S.D. Tex. Sept. 30, 2014) (Rosenthal, J.) (collecting cases) ("Some courts have found it inappropriate to enter judgment as a matter of law for the employer on a hostile-work-environment claim when a plaintiff submits even one instance of the [N-word] . . . .").

The *Johnson* court also concluded that the harassment at issue could not properly be

---

[13] The Court noted that "mayate" is understood as the Mexican-Spanish version of the N-word. *Johnson*, 7 F.4th at 400 n.8.

characterized as isolated. *Johnson*, 7 F.4th at 401. To reach that conclusion, the court did not limit its consideration to the two uses of the N-word alleged by the Plaintiff. *Id.* The court also considered the use of the terms "mijo" and "manos" by the same individual who uttered the N-word. *Id.* at 402. While not intrinsically offensive or necessarily related to race, when those terms were uttered by the same individual who had "allegedly used the vilest of racial epithets in [the plaintiff's] presence," the court found a genuine issue of material fact about whether they were used in an objectively offensive, racial manner. *Id.* at 402–03.

Plaintiff's allegations meaningfully parallel those in *Johnson*, and the Court agrees with the *Johnson* analysis. Plaintiff avers that the N-word was uttered at least three times in his presence by his supervisor, Justin Garza.[14] (D.E. 33-2, p. 1–2). This includes one instance where Garza allegedly referred to Plaintiff as "my [N-word]" when speaking with another worker. *Id.* When Plaintiff asked Garza to refrain from using racially offensive language, Plaintiff avers that Garza replied by asking, "Can you prove it?" and arguing that because Plaintiff "listen[s] to the music," he "should be fine with people using the [N-word]."[15] (D.E. 33-2, p. 7). Plaintiff also avers that Garza stated, upon learning that Plaintiff is Black, "[y]ou don't talk like a Black person." *Id.* Plaintiff also avers that both Garza, and Defendant's co-owner, Sean Kramer, referred to Plaintiff as "bubba"—a name which they did not use for other employees. *Id.* at 2. While not inherently offensive, Plaintiff argues that when viewed in context, and as uttered by the same person who had previously used the N-word and made other racially offensive remarks (i.e., "you don't talk like a Black person"), the Court should understand "bubba" as another word for the N-word. *See* (D.E. 33, p. 18).

---

[14] The Court **DENIES** Defendant's motion to strike this evidence. (D.E. 36, p. 2–3). *See supra*, note 8.

[15] The Court **DENIES** Defendant's motion to strike this evidence. (D.E. 36, p. 8). *See supra*, note 8.

In addition to these statements, Plaintiff claims that he was subject to racial discrimination in the form of unjustified discipline and termination which began unfolding—according to Plaintiff's timeline—after he asked Garza to refrain from using the N-word. *See* (D.E. 33-2, p. 3) (asking Garza to refrain on June 26);[16] *id.* at 2, 4 (first disciplinary citation on July 9). Based on the totality of these circumstances, a reasonable factfinder could conclude that the harassment Plaintiff allegedly experienced was severe or pervasive enough to constitute a hostile work environment.

Defendant attempts to distinguish *Johnson* on the grounds that the Fifth Circuit relied "on more than the Plaintiff's own testimony to corroborate the harassment that occurred against the employee." (D.E. 35, p. 2). That distinction does not persuade because "this [C]ourt will not weigh the evidence" when conducting a summary judgment analysis. *Caboni*, 278 F.3d at 451 (citing *Morris*, 144 F.3d at 380). Defendant's argument seems to suggest that the Court should not believe Plaintiff's account of what happened because it is not corroborated by additional testimony. Rather than providing grounds for a grant of summary judgment, Defendant's point highlights why it is not entitled to summary judgment: there is a genuine dispute of material fact about whether Plaintiff was subjected to a hostile work environment. Where, as here, Plaintiff has provided competent summary judgment evidence of a hostile work environment, Defendant's argument that the Court should not believe this evidence simply will not do. It is the jury's role to decide which witnesses to believe.

As for the fifth element, the Court finds that Plaintiff has shown a genuine issue of material

---

[16] The Court **DENIES** Defendant's motion to strike this evidence. (D.E. 36, p. 5). Plaintiff's statement to Garza not to call Plaintiff the N-word is not offered for the truth of the matter asserted, but for the statement's effect on the listener (allegedly leading Defendant to subject Plaintiff to discriminatory discipline and termination). FED. R. EVID. 801(c)(2).

fact exists regarding whether Defendant knew or should have known of the harassment and failed to take prompt remedial action. "An 'employer has actual knowledge of harassment that is known to "higher management" or to someone who has the power to take action to remedy the problem.'" *Johnson*, 7 F.4th at 405 (quoting *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999)).

Defendant asserts that "the only complaint it received from Hill during the term of his employment was submitted on October 18th, 2021." (D.E. 29, p. 16). Moreover, Defendant asserts that Salazar immediately investigated the matter, Garza apologized to Hill, and Hill has provided "no direct evidence that Garza continued the use of derogatory language after reporting his concerns on October 18th, 2021." *Id.* In support of these assertions, Defendants point to Garza's affidavit. *Id.* (citing D.E. 29-3, p. 2). In response, Plaintiff asserts that he first complained about the use of racial slurs in June 2021. (D.E. 33, p. 13; D.E. 33-2, p. 2–3).[17] And, Plaintiff provides

---

[17] In objecting to Plaintiff's averment that he first complained about the racial slurs in June 2021, Defendant is correct to point out that ordinarily, claims not raised in the operative complaint are not properly before the Court at summary judgment. (D.E. 35, p. 3). This "rule disallowing new legal claims has also been applied to new factual bases for previously pleaded legal theories." *Williams v. BFI Waste Servs., LLC*, No. 3:16CV75-DPJ-FKB, 2017 WL 1498230, at *2 (S.D. Miss. Apr. 24, 2017) (Jordan, J.) (collecting cases). But, at the same time, "there is an equally well-developed body of Fifth Circuit law holding that courts should construe new theories in a summary-judgment response as a motion to amend." *Id.* at *3 (collecting cases). Applying that rule here, the Court construes Plaintiff's new factual allegation regarding the June 2021 conversation as a motion to amend. As such, the Court **GRANTS** the construed motion and considers the factual allegation. The new factual allegation—which simply concerns the precise date on which Plaintiff first reported the racial harassment he allegedly experienced—does not alter the scope of the Plaintiff's claims, and its inclusion would not have altered the scope of discovery the parties chose to undertake. That is because the June 2021 time frame was already on the table given Plaintiff's allegations that he was then first subjected to racial epithets. *See* (D.E. 26, p. 4) (alleging use of N-word in June 2021). Defendant had clear notice that Plaintiff was bringing a claim for hostile work environment and had every opportunity to explore the factual basis for the fifth element of that claim during discovery. Indeed, Defendant sent Plaintiff Interrogatories regarding this topic. (D.E. 29-1, p. 6). In those Interrogatories, Defendant asked Plaintiff to identify when he reported the use of the N-word. *Id.* In response, Plaintiff stated that he "provided notice to Justin directly and I contacted Jennifer Johnson when [the use of racial slurs] continued." *Id.* Given the timeline proposed in the Interrogatory, this response could fairly be understood to indicate that Plaintiff notified Defendant of the slurs in late June 2021. Accordingly, considering this factual allegation would not contravene the core purpose of the rule against considering claims raised for the first time in opposition to summary judgment: providing adequate notice. *See De Francheschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (explaining that rule ensures pleading gives fair notice of the claim and grounds upon which it rests) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009)). "The command of Rule 15 is straightforward and permissive," 

20 / 22

competent summary judgment evidence of later complaints in October 2021, which suggests that whatever remedial action (if any) Defendant undertook was not effective. *Id.* (citing D.E. 33-2, p. 2). This conflicting evidence presents several genuine disputes of material fact, such as: (1) when did Plaintiff first notify Defendant of the racially offensive remarks; (2) what remedial steps, if any, did Defendant take upon receiving notice; (3) when did Defendant take remedial steps; and (4) if Defendant's remedial steps were effective. The parties provide conflicting evidence on these questions, so the Court cannot grant summary judgment with respect to Plaintiff's hostile work environment claims. *See Lujan*, 497 U.S. at 888 ("[W]here the facts specifically averred by [the nonmovant] contradict facts specifically averred by the movant, the motion must be denied.").

Because Plaintiff has shown genuine disputes of material fact regarding all five elements, the Court **DENIES** Defendant's motion for summary judgment on Plaintiff's hostile work environment claims.

---

*Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972), "the court should freely give [leave to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Here, given Defendant had adequate notice and the amendment concerns only a date, justice requires allowing Plaintiff to constructively amend his complaint such that the Court may now consider his new factual allegation; this is particularly true because the introduction of that minor factual allegation precludes summary judgment. *See Sherman*, 455 F.2d at 1242 (reversing district court's refusal to consider new legal theory which furnished basis for denial of summary judgment).

## III. Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's motion for summary judgment. (D.E. 29). The Court **GRANTS** Defendant's motion with respect to Plaintiff's discrimination claims. (D.E. 29). The Court **DENIES** Defendant's motion with respect to Plaintiff's retaliation and hostile work environment claims. (D.E. 29). The Court also **DENIES** Defendant's Motion to Strike. (D.E. 36).

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
March 25th, 2025